Filed 9/25/23  P. v. Orozco CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B326874 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA120069) |
| v. | |
| ANTHONY OROZCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed.

Carol J. Ojo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2022, a jury found appellant Anthony Orozco guilty of being a felon in possession of a firearm.  On appeal, he contends that insufficient evidence supports the finding that he was in possession of a firearm and that the court erred in instructing the jury.  We conclude that substantial evidence supports Orozco's conviction and that any instructional error was harmless beyond a reasonable doubt.  We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In October 2022, Orozco was charged by amended information for being a felon in possession of a firearm.  Orozco pled not guilty and a one-day jury trial took place.  Two witnesses—Emiliano Estrada and Brian Prebanda—testified for the prosecution.  No witnesses testified for the defense.

Estrada, a police officer, testified that, around 9:00 p.m. on July 13, 2022, he and his partner Prebanda were on patrol in a high-crime area.  Estrada was wearing his police uniform though the officers were in an unmarked vehicle.  As they drove westbound through an alley, they saw Orozco walking down the middle of the alley toward them.  As Orozco neared the vehicle, he quickly rushed to the north side of the alley toward a wrought iron fence.[1]  Believing that Orozco was attempting to flee, Estrada exited his vehicle.  As he exited, he saw Orozco "making a move as if he were moving a bag from him[self]."  Estrada then saw Orozco crouch between the wrought iron fence and an SUV.  Estrada next noticed a "strap" that "flew from the bottom portion

_____

[1] On cross-examination, Estrada acknowledged that in his written report, he had stated he observed Orozco "make a furtive movement to the north gate," but explained that "for the sake of testimony, [he] wanted to keep it in plain English."

[of a photograph the prosecutor had shown Estrada] towards the wrought iron fence." Estrada saw the strap go over the fence. However, there was a tarp hanging from the fence that prevented Estrada from seeing into the property behind the fence. Estrada scaled the fence and retrieved a bag, which contained a firearm. Estrada saw no other people in the alley aside from Prebanda and Orozco, and did not see anybody enter or leave the property from where he had retrieved the bag. Orozco was arrested. Estrada never contacted the residents of the property from where he retrieved the bag, and he never had the firearm examined for fingerprints or DNA. Estrada admitted that, prior to retrieving the bag from the yard, he never saw the "bag portion" of the bag, just the strap.

Prebanda's testimony echoed Estrada's. He confirmed the pair were patrolling in an unmarked police car and encountered Orozco walking toward them in an alley before seeing him duck behind an SUV. Prebanda saw Estrada jump over a fence and, when he returned, he was carrying a black bag. Inside the bag was a loaded handgun. Prebanda saw no one else in the alley. Prebanda did not recall finding any identification in the bag.

After the two witnesses testified, the parties stipulated that Orozco had previously been convicted of a felony offense that prohibited him from owning or possessing a firearm. Out of the presence of the jury, the court discussed the jury instructions with both attorneys; there was no mention of CALCRIM 250. After the jury was brought back in, both parties rested and the court instructed the jury. Included in the instructions were the text of CALCRIM 250 and 2511; the court instructed the jury

3

with the text of CALCRIM 250 followed immediately by the text of CALCRIM 2511.[2]

In closing arguments, after reminding the jury that the parties had stipulated to Orozco's prior felony conviction, the prosecutor argued that she had proven Orozco possessed a firearm through Estrada's testimony that he had seen a bag strap being thrown over a fence, that no one else was in the alley but Orozco and the officers, and that a tarp hanging from the fence prevented Estrada from seeing in the yard behind the fence; therefore, Estrada could not have known a bag was in the backyard unless, as he testified, he saw a bag strap thrown over the fence. Furthermore, when the bag was retrieved, it contained

---

[2] Both were included in the written instructions provided to the jury. CALCRIM 250 provided: "The crime charged in this matter requires proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crime in this case of Possession of a Firearm by a Felon true, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

CALCRIM 2511 provided in pertinent part: "The defendant is charged with unlawfully possessing a firearm in violation of Penal Code section 29800(a)(1). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a firearm; [¶] 2. The defendant knew that he possessed the firearm; [¶] AND [¶] 3. The defendant had previously been convicted of a felony."

According to the reporter's transcript, what the court read to the jury was substantively identical to what appeared in the written instructions.

a firearm.  The prosecutor argued that Orozco's actions in hiding behind an SUV when he saw the officers approaching and in ridding himself of the bag proved that Orozco knowingly possessed a firearm.

Defense counsel argued that when a person was approached by an SUV in an alley in a high-crime area, it would be reasonable for that person to crouch and hide.  Counsel also argued that footage from Estrada's body camera showed that Orozco had a "large cell phone in his right hand" when Estrada approached him, and counsel asked rhetorically how Orozco could have thrown the bag with a "large object in [his] hand."[3]  Defense counsel further contended the footage did not show a strap flying through the air, and there was no forensic analysis done on the bag or the firearm to connect them with Orozco.

On rebuttal, the prosecutor pointed out that there was no reasonable explanation for how the bag ended up over the fence,

---

[3] The body camera footage is not in the record on appeal. When Orozco's counsel asked Estrada:  "When you stopped [Orozco] immediately after the bag was removed, there was an object in his hand; correct?"  Estrada responded:  "I don't remember specifically.  If that is the case, if that is what you're getting at, there was a phone case on the ground.  So if he were to use his hands, it would make sense for the phone case to be on the ground, as if the phone fell out of his hand while he was removing it."  When counsel followed up with:  "I'm saying, we were all in court and watched the video.  There was a phone in his right hand when you approached him; right?"  Estrada responded:  "I didn't focus on his hands."  When Prebanda was asked the same question, he testified the phone was in Orozco's shirt pocket.  No further testimony was elicited on this point.

or how Estrada even knew there was a bag there, unless, as Estrada testified, he saw Orozco throw it over the fence.

After the jury left to deliberate, the court asked if the parties objected to the jury instructions as read. Neither party objected. Subsequently, the jury found Orozco guilty. In November 2022, the court sentenced him to three years. Orozco timely appealed.

## DISCUSSION

### A.  *Substantial Evidence Supports the Conviction*

The court instructed the jury that, to convict Orozco, it needed to find that: (1) he possessed a firearm, (2) he knew that he possessed the firearm, and (3) he had previously been convicted of a felony. Orozco contends "there was insufficient evidence to show that Appellant actually possessed the firearm." Specifically, he argues that it was dark and Estrada saw only the bag strap "and what he believed to be movements which he interpreted to be removing the strap from Appellant," but never saw Orozco with the bag itself. Further, Estrada never contacted the residents in the yard in which the bag was found, and did not submit the bag or firearm for forensic testing.

" 'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 988.) "We are not at liberty to reweigh evidence or revisit credibility issues." (*People v. Moore* (2016) 6 Cal.App.5th 73, 77, citing *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "We presume

6

' "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.] This standard applies whether direct or circumstantial evidence is involved.' " (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.)

Here, Estrada testified that, as he exited his vehicle while wearing his police uniform, he saw Orozco "making a move as if he were moving a bag from him[self]," and then saw a bag strap fly over a wrought iron fence. Despite being prevented by a hanging tarp from seeing what was on the other side of the fence, Estrada nevertheless scaled the fence and retrieved a bag, which contained a firearm. Estrada saw no other people in the alley aside from his partner and Orozco, and did not see anybody enter or leave the property where the bag was retrieved. From this testimony, a jury could reasonably deduce that Orozco was knowingly carrying a bag containing a firearm (which he threw over the fence when he saw a uniformed police officer). Therefore, substantial evidence supports the jury's conviction.

### B. *Orozco Suffered No Prejudice From the Court's Giving of CALCRIM 250*

" 'In assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled.' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1199.) Though Orozco's counsel did not object to the court giving CALCRIM 250, "to the extent that [appellant] 'argues that the trial court erred in instructing the jury in a way that affected his substantial rights,' [appellant]'s 'argument may still be heard on appeal.' " (*Ibid.*)

Orozco contends the court erred in instructing the jury with CALCRIM 250. Specifically, he argues that the court should not have given CALCRIM 250 because it was also giving CALCRIM

2511, and that this error was one of "constitutional dimension," requiring us to reverse unless we conclude "beyond a reasonable doubt that the error did not contribute to the verdict."

The People agree that the court erred in giving CALCRIM 250, but counter that Orozco suffered no prejudice, and that we should assess the error under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. Because we find the error harmless under both standards, we need not decide which applies.

The court instructed the jury with CALCRIM 250 when it told the jurors that they could not find Orozco guilty unless they found that he possessed a firearm "with wrongful intent." The court elaborated that "[a] person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime." Immediately thereafter, the court instructed the jury with CALCRIM 2511 by explaining that to find Orozco guilty of being a felon in possession of a firearm, it needed to find that he "knew that he possessed the firearm." Orozco argues that "[b]y giving both instructions, the Court could have confused the jury and led the jury to return a guilty verdict based on CALCRIM 250 without the jury considering the knowledge requirement in CALJIC 2511." But Orozco does not explain, and we do not see, how being instructed that it needed to find Orozco possessed a firearm with wrongful intent but without necessarily intending to break the law could have caused the jury to believe it did not also need to find that he knew that he possessed the firearm—especially when it was specifically instructed immediately thereafter that it *did* need to make this finding. Moreover, Orozco never argued that he unknowingly possessed a firearm—his defense was centered

8

around the supposed lack of evidence connecting the bag containing the firearm to him.  On this record, we find the court's giving of CALCRIM 250 to be harmless beyond a reasonable doubt.[4]

---

[4] We find distinguishable Orozco's citation to *People v. Southard* (2021) 62 Cal.App.5th 424, where CALCRIM 250 was given when the defendant was charged with three counts of resisting a peace officer with force, four counts of resisting a peace officer without force, and one count of a misdemeanor possession of methamphetamine.  (*Id.* at p. 432.)  The appellate court noted that, for the counts regarding resisting a peace officer, the jury had been instructed of the need to find the defendant knew the peace officer was performing his duty, and in the possession count, it had been instructed of the need to find the defendant " 'knew of the substance's nature or character as a controlled substance.' "  (*Id.* at p. 437.)  The appellate court found the erroneous instruction with CALCRIM 250 was contradictory because it informed the jury that " 'it is not required that [the defendant] intended to break the law.' "  (*Southard*, at p. 437.)  Because it was "hotly contested" whether the defendant knew that the peace officer was performing his duty and whether the defendant knew of the drug's nature as a controlled substance, the appellate court found the erroneous instruction prejudicial and reversed.  (*Id.* at pp. 437–439.)  Here, by contrast, the People did not need to prove that Orozco knew he was breaking the law by possessing a firearm, only that he knew he was possessing a firearm.  Therefore, unlike in *Southard*, no contradictory instructions were given.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.

10